## Ward v. Pendleton.

(Decided October 10, 1912.)

### Appeal from Johnson Circuit Court.

Contract—Action on Logging Contract—Evidence.—In an action on a logging contract, evidence examined and held that the amount of recovery fixed by the judgment of the lower court is reasonable. The allowance by the court to appellant on such items as sappage, damage to logs in drifting, undelivered timber, and for expenses incurred, appears to be reasonable and upon the whole record there seems to be no reason to disturb the judgment.

VAUGHN, HOWES & HOWES for appellant.

M. C. KIRK, J. F. BAILEY and C. B. WHEELER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

, Appellee sued appellant on a logging contract and recovered $925.12. The contract is as follows:

"This contract made and entered into by and between John Pendleton of the first part and Ashley Ward of the second part. John Pendleton has this day sold to Ashley Ward 25,000 (twenty-five thousand) cubes or all the timber that he may put into Main Fork of Paint Creek, not to exceed 50,000 cubes of timber to consist of white oak, poplar, pine and hemlock and said timber is to be good, sound, merchantable and is to measure from 14 inches and up at measuring place, and

it is further agreed that not over ten per cent is to be under 16 inches and John Pendleton is to drift said timber to Paintsville, Kentucky, aforesaid; Ashley Ward is to pay John Pendleton of the first part, thirteen cents per cubic foot for said timber. It is further agreed that the timber is to be measured as fast as said Pendleton gets above one hundred logs on the bank of said creek, and it is further agreed that said Ashley Ward is to pay 75 per cent of the money when said timber is measured and the remaining 25 per cent (twenty-five per cent) to be paid as the timber is drifted to Paintsville, Kentucky; it is further agreed that if said timber lays in the creek until March 1, 1909, said Pendleton is to lose the sappage on all timber that is to be sapped," &c.

After the contract was written and signed and sometime during the progress of the work, appellant agreed with appellee not to confine him to the maximum number of cubes named in the contract, but to take other timber not specified in the written contract, at the price of 8 cents per cube.

The lower court found that appellee had delivered to appellant in all 56,815 cubes of timber, and that 53,785 cubes were to be paid for at the contract price of 13 cents a cube and 3,030 cubes were to be paid for at 8 cents per cube, and also allowed appellee $37.50 for drifting other logs belonging to appellant, making the total which it found due appellee, of $7,271.95. It also found that appellant had paid on this indebtedness $6,-022.95 in cash. There is but little contest with reference to these items, but appellant claims he is also entitled to a credit of something over $200 on account of sappage of the logs delivered after March 1, 1909, and to about $250 to damage done the logs in drifting them to Paintsville, and to about $200 which he paid appellee for timber he failed to deliver, and also to about $75, expenses incurred in drifting logs for appellee. The lower court allowed appellant sappage on the timber delivered after March 1, 1909, $50, and $78 for the injury done to the logs by cutting them while drifting down the stream, and $150.88 for the timber undelivered, and $43 for the expenses incurred in drifting logs for appellee. These matters were the main issues between the parties in the lower court.

The testimony shows that there were about 219 logs that were delivered after March 1, 1909, and appellant

claims that, under the contract, he was entitled to a deduction on these logs on account of sappage whether needed or not. We differ with him on that point. The contract states that appellee is to lose the sappage on all logs not delivered before March 1, 1909, *that is to be sapped.* This language was unnecessary, unless it is construed to mean that the timber was to be sapped if it needed it, that is, if it was decayed or damaged. The preponderance of the testimony shows that the timber delivered after March 1, 1909, was cut within six or nine months before its delivery and that it was sound. Therefore, we are of the opinion that $50, the amount allowed on this item by the lower court, was liberal.

The next item was for injury to the logs occasioned by cutting them when drifting them to Paintsville. The logs were drifted down the stream during high rises and some of them, at the instance of appellant, had been cut sixty and seventy feet long. The streams were shallow, narrow, crooked and rocky and oftentimes one end of these logs would strike against one bank or a rock and hang and the other end would hang on the other bank or on a rock and thus block the stream and cause all the other logs to drift against the long one, thus making it necessary to cut the long log in two and make two logs out of it or cut a few feet off of the small end. Other persons who drifted logs in the streams at the same time also testified that it was necessary to do this thing, and in fact it was known to appellant to be absolutely necessary. We are somewhat doubtful of appellant being entitled to anything on this item, at least, $78, the amount allowed, was liberal.

The next item allowed appellant was $150.88 for timber undelivered by appellee under his contract for which he had been paid 75 per cent when measured. The proof showed that there were about thirty-two of these logs. The commissioner allowed appellant only $50 on this account. It seems that he did not take into consideration the 75 per cent paid on these logs by appellant, but the court did not commit that error for it allowed the full value of the logs.

Under the contract, it was proper to allow appellant something for drifting logs for appellee and we think the $43 allowed by the lower court is liberal enough.

It further appears, and is discussed by appellant, that a drift formed in the stream, in the manner stated,

at a point two or three hundred yards below the upper corporation line of the town of Paintsville, and that there were logs of appellee, appellant and four or five other persons in this drift and appellee claimed that his logs were at Paintsville and delivered under the terms of his contract. We differ with him. The contract called for the delivery of the logs at Paintsville, which meant at the usual landing place in Paintsville. Appellant broke this drift without any contract with appellee with reference thereto. He not only secured the logs of appellee, but others he had purchased from third persons. He claims that he was put to an expense of about $100 in doing this work, but what part of this expense was incurred in getting out appellee's logs was not shown. It seems that appellant owned all the logs in the drift and if he charged each person with their equitable part of the expense of breaking the drift, it is not shown nor is it shown what was due from each. In view of this fact and the apparent smallness of appellee's part of the expense if determined and the liberal allowance made appellant on the other items named, we do not feel justified in reversing the case on that account.

Upon the whole record we are of the opinion that the amount fixed by the lower court is reasonable.

Judgment affirmed.